**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MISSION CRITICAL PARTNERS, LLC, | No. 4:25-CV-00961 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| MISSION CRITICAL TALENT PARTNERS, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION**

**MARCH 4, 2026**

## I.    BACKGROUND

In May 2025, Mission Critical Partners, LLC ("Mission Critical") filed a complaint against Mission Critical Talent Partners, LLC ("Talent Partners") alleging violations of the Lanham Act, 15 U.S.C. § 1114, et. seq., and the common law.[1] In August 2025, Talent Partners was served with a summons and complaint through an individual designated by law to accept service of process on behalf of Talent Partners.[2] To date, Talent Partners has failed to respond to the complaint in any manner. In October 2025, Mission Critical moved for an entry of default against Talent Partners,[3] and default was subsequently entered by the Clerk of Court.[4]

---

[1]    Doc. 1.
[2]    Doc. 9.
[3]    Doc. 10.
[4]    Doc. 11.

In January 2026, Mission Critical filed this motion for default judgment.[5] Talent Partners has not responded, and the motion is now ripe for disposition. For the following reasons, the motion will be granted.

## II.    DISCUSSION

### A.    Whether Default Judgment is Warranted

Federal Rule of Civil Procedure 55 allows a district court to enter default judgment upon application by a party.[6] "Generally, the entry of a default judgment is disfavored, and a court is required to exercise sound judicial discretion in deciding whether to enter default judgment."[7] "This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a)."[8]

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."[9] "But when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is

---

[5]    Docs. 12, 13.

[6]    Fed. R. Civ. P. 55(b)(2).

[7]    *Kibbie v. BP/Citibank*, No. 3:08-CV-1804, 2010 WL 2573845, at *2 (M.D. Pa. June 23, 2010).

[8]    10A Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2685 (Apr. 2020 Update).

[9]    *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

typically appropriate in such circumstances at least until the defendant comes forward with a motion to set aside the default judgment under Rule 55(c)."[10] In cases where a defendant fails to appear, courts may enter default judgment "based solely on the fact that the default has occurred."[11]

A consideration of those factors favors a grant of default judgment here. First, Mission Critical would be prejudiced by its "current inability to proceed with [its] action due to [Talent Partners'] failure to defend."[12] Talent Partners' decision to not respond to the complaint would otherwise prevent Mission Critical from recovering any damages for its claims. More importantly, given that this is a Lanham Act case based upon alleged trademark infringement, Talent Partners' failure to respond could lead to irreparable harm, as it would prevent Mission Critical from stopping that infringement.[13]

Similarly, the second factor weighs in favor of default judgment. "[Talent Partners] has not responded to the allegations and, thereby, has failed to assert a defense."[14] Finally, there does not appear to be any excuse for Talent Partners' failure to respond to the complaint. After Mission Critical initiated this action, it

---

[10] *Deutsche Bank Nat. Tr. Co. v. Strunz*, No. 1:12-CV-01678, 2013 WL 122644, at *1 (M.D. Pa. Jan. 9, 2013).

[11] *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n. 9 (3d Cir.1990).

[12] *Broad. Music, Inc. v. Kujo Long, LLC*, No. 1:14-CV-00449, 2014 WL 4059711, at *1 (M.D. Pa. Aug. 14, 2014).

[13] *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 378 (3d Cir. 1992) ("trademark infringement amounts to irreparable injury as a matter of law").

[14] *Pesotski v. Summa & Iezzi, Inc.*, No. 1:17-CV-00221, 2017 WL 3310951, at *3 (M.D. Pa. Aug. 3, 2017).

properly served Talent Partners with the complaint through an individual designated by law to accept service of process on behalf of Talent Partners.[15] Having received the complaint, Talent Partners has yet to respond. Because Talent Partners has offered no explanation for its failure to respond, the Court finds that it is culpable.[16] Therefore, the Court finds that default judgment is appropriate under the circumstances.

However, a finding that default judgment is warranted "is not the end of the inquiry."[17] The Court must further consider whether the "unchallenged facts constitute a legitimate cause of action."[18] Although defaulting parties do not concede conclusions of law, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."[19]

Mission Critical has alleged claims of trademark infringement, unfair competition, false advertising, and dilution under the Lanham Act, as well as a common law claim for unfair competition.[20] Because the trademark infringement claim is central to the complaint and this motion, the Court will consider whether

---

[15]  Doc. 9.

[16]  *See Laborers Loc. Union 158 v. Shaffer*, No. 1:CV-10-1524, 2011 WL 1397107, at *1 (M.D. Pa. Apr. 13, 2011).

[17]  *Martin v. Nat'l Check Recovery Servs., LLC*, No. 1:12-CV-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016).

[18]  *Broadcast Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F.Supp.2d 537, 541 (E.D. Pa. 2008).

[19]  *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 161 (3d Cir. 2022) (internal quotation marks omitted).

[20]  Doc. 1.

the allegations contained in the complaint, taken as true, adequately state such a claim against Talent Partners.

B.  **Whether the Allegations Sufficiently State a Claim for Trademark Infringement Under the Lanham Act**

The facts alleged in the amended complaint, which the Court must accept as true for the purposes of determining whether Mission Critical has stated a claim, are as follows.

Mission Critical

provides consulting services in the fields of 911 and emergency communication, law enforcement, fire and emergency medical services, healthcare, transportation, special systems, engineering, operations, tech/IT, facilities design, engineering, operations, and maintenance among other MCP services include recruiting services and executive-level recruiting assistance.[21]

Mission Critical provides these services nationwide and, in connection with those services, it uses the "MISSION CRITICAL PARTNERS®" trademark (the "Mark").[22]

In 2009 Mission Critical registered the Mark with the United States Patent and Trademark Office ("USPTO") under registration number 5,274,098.[23] The Mark has been used by Mission Critical since 2008 in "interstate commerce as a trademark and service mark which designates [Mission Critical] as the source, provider,

---

[21]  *Id.* ¶ 7.
[22]  *Id.* ¶¶ 8, 9.
[23]  *Id.* ¶¶ 10, 11.

licensor, or sponsor of goods or services to which the mark is attached."[24] The Mark applies to "[t]elecommunication consultation in the nature of technical consulting in the field of audio, text and visual data transmission and communication" and to consulting in the fields of information technology and telecommunications technology.[25]

Talent Partners in turn "provides placement and consulting services" of a similar nature to Mission Critical.[26] Talent Partners uses "the term 'Mission Critical' and 'Partners' in conjunction with these service."[27] It further "advertises, promotes and markets its services using 'Mission Critical' and 'Partners' in conjunction, and the name 'Mission Critical Talent Partners,'" and "utilized 'Mission Critical' and 'Partners' in conjunction with job recruitment efforts on online employment and talent acquisition platforms."[28] Talent Partners' use of these terms has caused actual confusion in the marketplace, resulting in, for example, Mission Critical receiving phone calls from recruiters responding to Talent Partners' posts on job marketing platforms, and from applicants to Talent Partners seeking an update on their application.[29] Moreover, a "Google search of 'Mission Critical Talent Partners' will yield links to [Mission Critical] sites in two of the first three results."[30]

---

[24]  *Id.* ¶¶ 12, 13.
[25]  *Id.* ¶ 14.
[26]  *Id.* ¶ 23.
[27]  *Id.* ¶ 24.
[28]  *Id.* ¶¶ 25, 26.
[29]  *Id.* ¶¶ 27, 29, 30.
[30]  *Id.* ¶ 31.

Mission Critical has not authorized Talent Partners to use the Mark.[31] As a result of Talent Partners' "actions in adopting and incorporating" the Mark into its business,[32] Mission Critical sent cease and desist letters to Talent Partners in February and March 2024, followed by two emails in October 2024.[33]

With regard to whether these facts state a claim under the Lanham Act, to adequately allege trademark infringement under 15 U.S.C. § 1114(1)(a), "a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion."[34]

The allegations contained within the complaint easily satisfy the first two elements of this claim. The complaint alleges that Mission Critical owns the Mark, it is valid and has been registered with the USPTO since 2009, and continuously used in commerce by Mission Critical since 2008.[35]

Turning then to the third element, "[a] likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark."[36] The Third Circuit has "developed a nonexhaustive list of

---

[31]  *Id.* ¶ 33.
[32]  *Id.* ¶ 34.
[33]  *Id.* ¶¶ 20-22.
[34]  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).
[35]  Doc. 1 ¶¶ 10-14.
[36]  *A & H Sportswear*, 237 F.3d at 211 (internal quotation marks omitted).

factors to consider in determining whether there is a likelihood of confusion between marks."[37] Those factors, known at the "*Lapp* factors," are:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of the similarity of function;

(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.[38]

An analysis of these factors demonstrates sufficient allegations to establish a likelihood of confusion. First, there appears to be some similarity between the Mark and Talent Partners' infringing mark—the only difference is the addition of the word

---

[37]   *Id.* at 215.
[38]   *Id.* (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983)).

talent. Given the similarity, these marks would facially appear to "create the same overall impression when viewed separately."[39]

Second, there are adequate allegations to establish the strength of the Mark. The Mark seems to be suggestive, implying that Mission Critical provides services related to first responders, meaning it is a weaker mark.[40] However, the allegations establish that the Mark has achieved commercial strength or marketplace recognition.[41] This therefore weighs in favor of finding a likelihood of confusion.

The third, fourth, and fifth factors are unclear, as there are no allegations in the complaint related to these considerations. The sixth factor weighs in favor of concluding that there is a likelihood of confusion, as Mission Critical has provided examples of actual confusion.[42]

Seventh, the services from both Mission Critical and Talent Partners are directly competing and marketed through the same channels of trade and advertised through the same media.[43] Eighth, and relatedly, the targets of sales efforts appear to be the same.[44] The ninth and tenth factors indicate a likelihood of confusion, as the companies provide similar services in the same fields.

---

[39] *Id.* at 216.
[40] *Id.* at 221-22.
[41] Doc. 1 ¶¶ 16-17.
[42] *Id.* ¶¶ 27, 29, 30, 32.
[43] *Compare id.* ¶¶ 13, 14 and Doc. 1-3 *with* Doc. 1 ¶¶ 25-27.
[44] *Id.* ¶¶ 27, 32.

These factors collectively militate in favor of finding a likelihood of confusion based upon the allegations contained within the complaint. Mission Critical has therefore established all three elements of a trademark infringement action, and the entry of default judgment is warranted.

### C.    Damages

Because Mission Critical has adequately stated a claim against Talent Partners, the only remaining consideration is the relief to which Mission Critical is entitled. "As for damages, the district court must determine the amount if it is not for 'a sum certain or a sum that can be made certain by computation.'"[45]

Mission Critical has provided an affidavit that attests its employees have dedicated approximately eighteen hours of time to addressing Talent Partners' infringement, totaling $1,331 in wages paid related to this matter.[46] These damages have been adequately stated as a sum certain total, and will be awarded.

Mission Critical further requests $13,698.58 in attorneys' fees for work on this case.[47] With respect to that request, the "Lanham Act . . . permits the recovery of reasonable attorneys' fees only 'in exceptional cases.'"[48] The Third Circuit has explained that, pursuant to United States Supreme Court precedent, "a district court

---

[45]  *PPG Indus. Inc.*, 47 F.4th at 161 (quoting Fed. R. Civ. P. 55(b)).
[46]  Doc. 12-3.
[47]  Doc. 12-2.
[48]  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 313 (3d Cir. 2014) (quoting 15 U.S.C. § 1117(a)).

may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'"[49]

"Thus, it is within a court's discretion to find a case 'exceptional' based upon 'the governing law and the facts of the case,' irrespective of whether the losing party is culpable. For example, 'a case presenting exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award.'"[50] "Whether litigation positions or litigation tactics are 'exceptional' enough to merit attorneys' fees must be determined by district courts 'in the case-by-case exercise of their discretion, considering the totality of the circumstances.'"[51] "The losing party's blameworthiness may well play a role in a district court's analysis of the 'exceptionality' of a case," but culpability is not a requirement to award attorneys' fees."[52]

The Court cannot, on the facts presented, conclude that this is an exceptional case meriting an award of attorneys' fees; rather, this appears to be a highly unexceptional case. First, it is impossible to determine that there is an unusual discrepancy in the merits of the positions taken by the parties, since Talent Partners

---

[49] *Id.* at 315 (quoting (*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).
[50] *Id.* at 314 (quoting *Octane Fitness*, 572 U.S. at 555 (ellipsis omitted)).
[51] *Id.* at 315 (quoting *Octane Fitness*, 572 U.S. at 555).
[52] *Id.*

has not taken a position in this litigation. It may well have been that Talent Partners could present a meritorious defense, or that Mission Critical's claims would fall apart under scrutiny. Under the current facts the Court simply cannot make this determination.

Second, the evidence and allegations do not demonstrate that Talent Partners has litigated this case in an unreasonable manner. The fact that Talent Partners did not respond to pre-suit cease and desist letters does not make its litigation unreasonable. Nor does the mere fact that it failed to respond to the complaint.

As other courts have observed in similar situations, a defendant who never responds to a complaint does not "litigate the case in an unreasonable manner because [it] did not litigate the case at all."[53] And while "the failure to respond to demand letters[] and the failure to respond to the lawsuit" means that Mission Critical becomes the prevailing party by means of default judgment, "the statutory language [for an award of attorneys' fees] requires more than merely prevailing."[54] As those courts have noted, "confessing judgment by default is far more appropriate than filing a baseless answer and litigating the suit in bad faith (both of which would

---

[53] *RCI TM Corp. v. R & R Venture Grp., LLC*, No. 6:13-CV-945-ORL-22, 2015 WL 668715, at *11 (M.D. Fla. Feb. 17, 2015). *See also BMW of N. Am., LLC v. Cuhadar*, No. 6:14-CV-40-ORL-37DAB, 2014 WL 5420133, at *4-5 (M.D. Fla. July 10, 2014).
[54] *Cuhadar*, 2014 WL 5420133 at *4.

more appropriately warrant an award of attorney's fees)" and, consequently, is not necessarily unreasonable.[55]

More importantly, this Court cannot entertain a brightline rule where the failure to respond to a complaint necessarily means that a case was litigated in an unreasonable manner. To apply such a rule would run contrary to the Supreme Court's admonition that questions of exceptionality "must be determined by district courts in the case-by-case exercise of their discretion, considering the totality of the circumstances."[56] In light of that instruction, this Court cannot find that the mere fact that a defendant has failed to litigate a matter and lost by means of default judgment necessarily means the defendant litigated the case in an unreasonable manner.[57]

In total, there is insufficient evidence that Talent Partners' actions here have created exceptional circumstances that would warrant an award of attorneys' fees. Accordingly, Mission Critical's request for such fees will be denied.

Lastly then, the Court turns to the question of whether a permanent injunction is appropriate. As an initial matter, this Court notes that the entry of a permanent

---

[55]  *Id.* at *5.

[56]  *Octane Fitness*, 572 U.S. at 555.

[57]  The Court recognizes that other courts have reached a contrary result. *See, e.g., Rath v. Vita Sanotec, Inc.*, No. CV 17-953 (MN), 2020 WL 5877597, at *4 (D. Del. Oct. 2, 2020) (awarding attorneys' "fees for litigating a case in an unreasonable manner where . . . the defendant has failed to litigate resulting in a default judgment"). As discussed, however, this Court cannot follow those cases, as they are contrary to the Supreme Court's decision in *Octane Fitness*.

injunction may be appropriate after default judgment, provided requirements for imposition of an injunction are met.[58]

The issuance of a permanent injunction is "entrusted to a court's equitable discretion, [and therefore] an injunction 'does not follow from success on the merits as a matter of course.'"[59] To obtain a permanent injunction, a party "must make a sufficient showing that (1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest."[60] While courts must "consider these factors holistically, the inability to show irreparable harm—or, relatedly, that a legal remedy would be inadequate—defeats a request for injunctive relief."[61]

"The first two elements typically constitute two sides of the same inquiry, for the availability of adequate monetary damages belies a claim of irreparable injury."[62] Importantly, however, when a plaintiff in a Lanham Act case has proven trademark infringement, it "shall be entitled to a rebuttable presumption of irreparable harm."[63]

---

[58]    *See PPG Indus. Inc.*, 47 F.4th at 160 (affirming district court opinion that, *inter alia*, imposed permanent injunction related to entry of default judgment).

[59]    *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)).

[60]    *Id.* (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

[61]    *Id.*

[62]    *Ne. Pa. Freethought Soc'y v. Cnty. of Lackawanna Transit Sys.*, 938 F.3d 424, 442 (3d Cir. 2019).

[63]    15 U.S.C. § 1116(a).

An analysis of those factors supports the imposition of a permanent injunction. First, this Court has found that Mission Critical adequately stated a claim for trademark infringement and, through default judgment, Mission Critical established trademark infringement, resulting in a rebuttable presumption of irreparable harm.[64] Given that Talent Partners has not defended this action, it quite obviously has not rebutted that presumption.

Second, as the Third Circuit has observed, "[a] finding of infringement or the likelihood of confusion with the concurrent use of the infringed trademark implicitly signifies a loss of expectation and goodwill."[65] The Third Circuit went on to explain that "[t]he infringement amounts to borrowing the senior user's reputation and goodwill, which is an injury in and of itself, even without evidence of actual loss of goodwill."[66] And it is well established that grounds "for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."[67]

Talent Partners' infringement presumptively resulted in the co-opting of Mission Critical's reputation and goodwill, which sufficiently demonstrates irreparable injury when coupled with the allegations contained within the complaint. Relatedly, because a loss of control of Mission Critical's reputation and the loss of

---

[64]   *Id.*
[65]   *Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 131 (3d Cir. 2004).
[66]   *Id.*
[67]   *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 204 (3d Cir. 2014) (quoting *S & R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 378 (3d Cir.1992)).

goodwill constitute irreparable injury, monetary remedies are insufficient, and no remedy other than an injunction is likely to remedy those injuries. Mission Critical has therefore demonstrated both irreparable injury and that no other remedy available at law could adequately remedy those injuries.

Turning to the third factor, the balance of hardships also favors the imposition of a permanent injunction. The purpose of this balancing test is "to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner."[68] As courts within this circuit have noted, "'[t]he balance of hardships weighs strongly in favor of an injunction where all that is requested is that Defendant comply with the law and abstain from infringing.'"[69]

As a result of the default judgment, Talent Partners' conduct is considered infringing and a permanent injunction would require only that they stop violating the Lanham Act, which weighs in Mission Critical's favor.[70] Failing to issue an injunction would harm Mission Critical by creating a potential deterioration of its goodwill and harm to its reputation. Given Talent Partners' failure to litigate this matter, the Court cannot conclude that any hardships it would suffer outweigh those

---

[68] *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004).

[69] *Pa. State Univ. v. Vintage Brand, LLC*, No. 4:21-CV-01091, 2025 WL 1757243, at *4 (M.D. Pa. June 25, 2025) (quoting *Richardson v. Cascade Skating Rink*, No. CV 19-8935-NLH-MJS, 2022 WL 833319, at *5 (D.N.J. Mar. 21, 2022)).

[70] *Cf. Silvertop Assocs., Inc. v. Kangaroo Mfg., Inc.*, 319 F. Supp. 3d 754, 769-70 (D.N.J. 2018) ("The Court finds a balance of the hardships weighs in favor of granting a preliminary injunction when the only harm is precluding, at least temporarily, a defendant from the sale of an infringing article"), *aff'd*, 931 F.3d 215 (3d Cir. 2019).

that would be suffered by Mission Critical. Accordingly, the third factor also weighs in favor of the imposition of a permanent injunction.

Finally, an injunction would not disserve the public interest. The Third Circuit has stated that "the most basic public interest at stake in all Lanham Act cases . . . [is] the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy."[71] Where there is a likelihood of confusion, "it follows that if such use continues, the public interest would be damaged. Conversely, a prohibition upon defendant's use of its mark would eliminate that confusion."[72] Because the allegations contained within the complaint establish a likelihood of confusion through Talent Partners' use of the Mark, this factor weighs in favor of an injunction.

All four factors therefore militate in favor of the imposition of a permanent injunction, and one will be entered in this matter.

---

[71]  *Kos Pharms.*, 369 F.3d at 730.
[72]  *Id.* (brackets and internal quotation marks omitted).

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that Mission Critical is entitled to default judgment. Its motion will therefore be granted, appropriate damages awarded, and a permanent injunction imposed.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

18